23

United States District Court
Southern District of Texas
FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

JUL 3 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DANIEL SALDANA | § | |
| | § | 149 |
| V. | § | CIVIL ACTION NO. B-00-~~1491~~ |
| | § | |
| H. E. BUTT GROCERY COMPANY | § | |

## DEFENDANT, H.E. BUTT GROCERY COMPANY'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY ALL PROCEEDINGS

TO THE HONORABLE COURT:

Defendant files this Motion to Compel Arbitration and Dismiss/Stay All Proceedings pursuant to the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and in support thereof would show this Court as follows:

### SALDANA/H.E.B. LAWSUIT

This is an ERISA lawsuit. Plaintiff's Amended Complaint seeks to recover damages related to the alleged failure of the H.E.B. Work Injury Benefit Plan to provide benefits after SALDANA sustained an occupational injury. SALDANA seeks to enforce H.E.B.'s obligations pursuant to the Work Injury Benefit Plan. Defendant files this Motion to Compel Arbitration pursuant to the same contract SALDANA seeks to enforce.

### THE SALDANA/H.E.B. ARBITRATION CONTRACT

In September, 1994, H.E.B. became a non-subscriber under the Workers' Compensation Act. H.E.B. established a voluntary occupational insurance plan entitled the "Work Injury Benefit Plan" (hereinafter "the Plan") which provides its employees an

1

option to select Basic or Comprehensive Coverage.  (True and correct copy of the Summary Plan Description is attached hereto as Exhibit "D-1").

Basic coverage provides payment for 90% of medical expenses incurred from qualified providers by an employee for treatment of an injury on the job and no income replacement benefits.  An employee opting for Basic coverage retains the common law right to sue H.E.B. for injuries sustained on the job.   Comprehensive coverage, however, provides employees with 100% continued income benefits and 100% medical benefits with qualified providers conditioned, however, that the employee comply with the requirements of the Plan after sustaining an injury on the job.  An employee opting for Comprehensive coverage agrees to arbitrate all disputes  relating to the administration of benefits under the Plan.

DANIEL SALDANA ("SALDANA") and H.E.B. signed a contract of virtue of which each became legally bound to submit to arbitration any dispute relating to SALDANA's on-the-job injury or the payment of benefits under the Work Injury Benefit Plan.  See last page of Exhibit "D-1".    The contract provides as follows:

A.     It is agreed that any and all disputes, claims, (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to the Agreement, the Plan, or the Trust or to the occupational injury, death or disease of Partner shall be submitted to final and binding arbitration under the Federal Arbitration Act, in accordance with the terms and conditions outlined in the SPD under the heading "Arbitration of Disputes". The claims covered by the agreement to arbitrate include, but are not limited to, those which relate to the following:

a.     The formation, application and interpretation of the Agreement.

b.     **Eligibility for benefits from the Trust, coverage**

2

> under the Plan or claims for damages or monetary award....
>
> c.    That H.E.B. has discharged or in any manner discriminated against partner because partner in good faith filed a claim... or caused to be instituted, in good faith, any proceeding under the agreement, the Plan or the TWCA.

<u>See</u> "Election and Agreement Form" attached as last page of Exhibit "D-1".

H.E.B. has not been able to locate the personnel file of DANIEL SALDANA which contains the signed Election and Agreement form of DANIEL SALDANA.  H.E.B. records, however, do reflect DANIEL SALDANA selected Comprehensive coverage under the Plan  and agreed to arbitrate all disputes. (See affidavit of Carmen Gellhausen attached as Exhibit "D-2").  H.E.B.'s "PNAT Screen" confirms SALDANA signed the Comprehensive Election Form, that the Election Form was received by H.E.B. and entered into the PNAT database (see Exhibit "D-2").  Further, DANIEL SALDANA received benefits under the Comprehensive Plan which he would not have been entitled to received under the Basic Plan.  SALDANA was not required to establish the negligence of H.E.B. to be entitled to recover any benefits under the Comprehensive Plan.  All parties proceeded as if SALDANA selected Comprehensive coverage, and SALDANA has ratified his election of Comprehensive benefits.  (See Plaintiff's responses to Defendant's Request for Admissions in state court proceeding (attached as Exhibit "D-3"); see also affidavit of Carmen Gellhausen attached hereto as Exhibit "D-2").

## GENERAL PRINCIPALS RELATING TO ARBITRATION

Federal law strongly favors the arbitration process. *See Gilmer v. Interstate/Johnson Lane, Corp.*, 500 U.S. 20, 25,111 S. Ct. 1647, 1651, 114 L. Ed. 2d 26 (1991)(noting FAA manifests liberal federal policy favoring arbitration); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 225, 107 S. Ct. 2332, 2337, 96 L. Ed. 2d 185 (1987)(recognizing strong national policy encouraging use of arbitration). In fact, the policy in favor of arbitration is so strong that Texas courts have created a presumption in favor of agreements to arbitrate under the Federal Arbitration Act. *See Cantella & Co., Inc. v. Goodwin*, 924 S.W. 2d 943, 944 (1996)(per-curiam); *Jack B. Anglin Co. v. Tipps*, 842 S.W. 2d 266, 268 ("the public policy of both our state and federal governments favors agreements to resolve legal disputes through voluntary settlement procedures"). When confronted with a motion to enforce an arbitration agreement, a court must first determine whether a valid agreement to arbitrate exists and if so, whether the issue in question is covered by that arbitration agreement. *See Webb v. Investacorp, Inc*. 89 F. 3d 252, 257-58 (5th Cir. 1996).

Simply put, the evidence conclusively establishes SALDANA agreed to submit any disputes relating to coverage under the Plan to be submitted to final and binding arbitration.[1] H.E.B. records reflect this agreement. SALDANA accepted benefits

---

[1] Under Texas and federal law, it is not necessary that an agreement to arbitrate be signed by parties to be binding. *See e.g. D. Wilson Construction Co. v. Cris Equipment Company*, 988 S.W. 2d 388, 397 (Tex. App.- Corpus Christi 1998, no writ); *Hearthshire Braeswood Plaza, Ltd. v. Bill Kelly Co.*, 849 S.W. 2d 380, 392 (Tex. App.- Houston [14[th] Dist.] 1993, writ denied)(although party did not sign contract containing arbitration clause, his acts show intent to be bound by contract); *Shearson Lehman Hutton, Inc. v. McKay*, 763 S.W. 2d 934, 937

4

pursuant to this agreement and he is now suing to recover benefits pursuant to the

very contract that requires arbitration of disputes.[2]  The Texas Supreme Court recently

addressed this very issue in its recent opinion of  *In re: FirstMerit Bank, et al*, 44 Tex.

S. Ct. J. 900 (June 14, 2001).  In *FirstMerit*, some of the Plaintiffs asserted they were

exempt from an arbitration clause because they did not sign the contract (in this suit

SALDANA simply indicated he cannot recall whether he signed the contract or not).

The court stated:

> But a litigant who sues based on a contract subjects him or herself to the
> contract's terms... Thus, by suing *FirstMerit* based on the de los Santoses
> installment contract, the Alvarezes  subjected themselves to the contract's
> terms, including the Arbitration Addendum.

*Id* at 903.

### SALDANA'S RATIFICATION OF ARBITRATION AGREEMENT

SALDANA's claim that the Election and Agreement Form is not enforceable

because he does not recall whether he signed the document is without merit because

he has ratified the Agreement.  *See In re: H.E. Butt Grocery Co.*, 17 S.W. 3d 360, 377

(Tex. App.- Hou.[14th Dist.] 2000, n.w.h.)("...we conclude that 'ratification' is a

further basis supporting arbitration...)  The Court in *First Texas Saving Assn. of Dallas*

---

(Tex. App. - San Antonio 1989, no writ)(collecting cases interpreting federal arbitration act requirements and
enforcing unsigned arbitration agreements); *Genesco, Inc. v. Kakiuchi Co., Ltd.*, 815 F. 2d 840, 846 (2d Cir.
1987); *Valero Refining, Inc. v. M/T Lauberhorn*, 813 F. 2d 60, 64(5th Cir. 1987); *Richlake Energy, Inc. v. Baker
Hughes Oil Field Operations, Inc.* No. 00-015, 2000 U.S. Dist. LEXIS 8310(E.D.LA. 2000); *M & I Electric
Industries, Inc. v. Rapistan Demag Corp.*, 814 F. Supp. 545, 547 (E.D. Ex. 1993)(neither the FAA nor the courts
require that written arbitration agreements be signed be enforceable).

[2] See Exhibit "D-2" (with attachments).  Defendant has previously moved to compel arbitration the
*negligence* claim pending in state court relating to this occupational injury.  No evidence was presented regarding
Plaintiff's attempt to enforce the Plan, however,  as in this lawsuit.  The trial court denied Defendant's motion.

*v. Dicker Center, Inc.*, 631 S.W.2d 179, 188 (Tex. App. - Tyler 1982, no writ) defined ratification as follows:

> *Ratification is an option or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him in which he had the right to repudiate. Ratification occurs when one, induced by fraud enter into a contract, continues to accept benefits under the contract after he becomes aware of the fraud, or if he conducts himself in such a manner as to recognize the contract is binding. Once a contract has been ratified by the party, the defrauded party waives any right to seek recision.*

*Id*. at 186 (quoting *Sawyer v. Pierce*, 580 S.W.2d 117, 122 (Tex. Civ. App. - Corpus Christi 1979, writ ref'd n.r.e.).

The *Dicker* court ruled because the appellants had retained the benefits of a release, they could not avoid the terms of the settlement due to their ratification of the contract. *Id*. Stated simply, if a person continues to receive benefits of a contract after he/she becomes aware of a fraud or duress, or if he acts in a manner as to recognize that the contract is binding, he affirms the contract and waives his right to rescind the contract. See *Pittman v. Lightfoot*, 937 S.W.2d 496, 522 (Tex. App. - San Antonio 1996, denied). Any act based upon the recognition of the contract as existing or any act inconsistent with an intent to void the contract has the effect of waiving the right of recision. *Rosenbaum v. Texas Building & Mortgage Co.*, 167 S.W.2d 506, 508 (Tex. 1943); *Wetzel v. Sullivan, King & Sabom*, 745 S.W. 2d 78, 81-82 (Tex. App.-Houston[1st Dist.] 1988, no writ)(party estopped from denying existence of a written agreement to arbitrate where party ratified the contract "by acting under it or affirmatively acknowledging it").

6

A similar fact situation was addressed by the Fort Worth Court of Appeals in *Pack v. City of Fort Worth*, 552 S.W.2d 895 (Tex. Civ. App. - Fort Worth 1977, writ ref'd n.r.e.). In *Pack*, the Plaintiff was injured while he was in the course and scope of his employment with the *City of Fort Worth*. *Pack* signed a release discharging the *City* from all liability when he elected to participate in the *City's* retirement fund. *Pack* then filed suit to collect damages for the injuries he sustained on the job and the *City* asserted ratification and release as a defense. *Pack* asserted he was not aware his decision to participate in the *City's* retirement fund constituted a release of his claim against the *City*. The court ruled because *Pack* continued to receive benefits of the release (monthly retirement payments), he cannot reform the "negative aspects" of the contract to comport with his understanding of same. *Id*. at 898. The court stated:

> *Clearly, Pack has ratified the transaction by his acceptance*
> *of its benefits, and cannot now be heard to complain about*
> *its terms just because he did not understand them . . . the*
> *power of avoidance for fraud or misrepresentation is lost if*
> *the injured party, after acquiring knowledge of the fraud or*
> *misrepresentation, manifest to the other party to the*
> *transaction and intention to affirm it, or exercises dominion*
> *over things, restoration of which is a condition of his power*
> *of avoidance, . . . (quoting restatement of the law of*
> *contracts § 484 "Loss of Power of Avoidance by Affirming*
> *Transaction.") 1932.*

*Id*. at 898-899.

The court ruled that *Pack* released the *City* and his continued acceptance of benefits under release constituted a ratification of the agreement. He was bound to the terms of the release.

In this claim, SALDANA received benefits under the Comprehensive Benefit Plan

7

totaling $12,033.10.  See affidavit of Carmen Gellhausen attached as Exhibit "D-2".
SALDANA has acknowledged he elected Comprehensive benefits by receiving those
benefits.  He is now precluded from arguing his election of Comprehensive coverage
is void.  In fact, this suit is an attempt to recover benefits pursuant to the same
contract that required arbitration.  SALDANA's attempt to avoid the terms of the
contract is lost because he continued to receive benefits under the Plan after being
made aware of the terms of the Plan.

### CONCLUSION

In the past ten years, the Texas Supreme Court has consistently, and
unanimously, enforced arbitration agreements as a matter of public policy despite
arguments challenging the enforcement of these agreements.  *See In re: FirstMerit
Bank,* 44 Tex. S. Ct. J. 900 (June 14, 2001); (enforcing arbitration agreement upon
non-signatories suing as beneficiaries to contract).  *In re: Oakwood Mobile Homes,
Inc.*, 987 S.W. 2d 571 (Tex. 1999) (upholding arbitration agreement contrary to
Plaintiff's claims of fraud, unconscionability and waiver); *EZ Pawn Corporation v. Hon.
Fernando Mancias*, 934 S.W.2d 87 (Tex. 1996)(unequal bargaining power does not
defeat arbitration; arbitration agreements are not per se unconscionable); *Cantella &
Co., Inc. v. Hon. Gerald A. Goodwin*, 924 S.W.2d 943 (Tex. 1996)(failure to read
agreement does not defeat arbitration); *Jack B. Anglin-Co., Inc. v. Honorable Arthur
Tipps*, 842 S.W.2d 266 (Tex. 1992)(public policy favors arbitration); See also *L.H.
Lacy Co. v. City of Lubbock*, 559 S.W.2d 348 (Tex. 1977).

In this case, the same principles compel arbitration. The competent evidence

establishes SALDANA agreed to arbitrate disputes relating to eligibility for benefits under the Plan.  H.E.B.'s records reflect SALDANA signed the agreement and the agreement properly invokes the Federal Arbitration Act.  As a result, the Court should uphold the parties' agreement to arbitrate and grant Defendant's Motion to Compel Arbitration and Dismiss or, alternatively Stay All Proceedings.  *See Fedmet Corp. v. M/V Buyalyk*, 194 F 3d 674, 678 (5th Cir. 1999)(dismissal of suit is appropriate if all claims are properly referred to arbitration); *Alford v. Dean Witter Reynolds, Inc*. 975 F 2d 1161, 1164 (5th Cir. 1992)(stay required of any suit upon showing claim is subject of arbitration agreement).

Respectfully submitted,
SHELTON & VALADEZ, P.C.
2600 Weston Centre, 112 E. Pecan
San Antonio, Texas  78205
Telephone: (210) 349-0515
Facsimile: (210) 349-3666

BY:_____
ROBERT A. VALADEZ
State Bar No. 20421845
MARK A. GILTNER
State Bar No. 07964960
Federal Bar No. 15441
ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

9

I certify that a true and correct copy of the foregoing was forwarded certified mail, return receipt requested on the _____ day of July, 2001 to:

George P. Powell
Hinojosa & Powell, P.C.
612 Nolana, Suite 410
McAllen, Texas 78504

MARK A. GILTNER

giltner-doc03.wpd

10





*Safety Means Avoiding Risks Together*

WORK
INJURY
BENEFIT
PLAN

SUMMARY
PLAN
DESCRIPTION

Form Number 19385 (English)
March 1995

*Avoiding*
*Accidents*

*and*

*Providing*
*Benefits*

DEFENDANT
EXHIBIT
O-1

**Please read this booklet carefully.
To get _Comprehensive_ coverage,
you must elect it by giving your
signed Election and Agreement
Form — at the back of this
Summary Plan Description — to
your supervisor before the
deadline.**

CitaPDF - www.texisx.com

# Introduction

**H-E-B SMART Plan**

H. E. Butt Grocery Company is committed to working with all its Partners to provide a safe place to work. That's why H-E-B has the SMART Plan -- **Safety Means Avoiding Risks Together**.

But if our efforts -- yours and H-E-B's -- don't prevent an on-the-job injury, the Company is equally committed to offering its Partners an outstanding program of benefits for covered work injuries. To meet this commitment, H-E-B has created its own special program of continued income, medical benefits and an accidental death insurance policy for covered work injuries.

The SMART Plan consists of two parts. The first part -- the work safety awareness and accident avoidance program -- is designed to keep our Partners healthy by eliminating unsafe practices from our stores, distribution centers, and work areas.

The other part of our SMART Plan is described in this booklet. It is called the H-E-B Work Injury Benefit Plan (the "Plan"). It offers continued income, medical coverage and an accidental death insurance. Under this Plan, you have two choices of coverage levels -- both paid entirely by H-E-B. An overview of the Plan begins on the next page.

## Table Of Contents

Who Is Eligible And What Injuries Are Covered . . . . . . . . . . . .     5
Continued Income Benefits --
    **Comprehensive** Coverage Only . . . . . . . . . . . . . . . . . . . . .     9
Medical Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    12
Accidental Death Benefits And Funeral Expenses . . . . . . . . . . .    17
When Your Benefits End . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18
Drug Testing After Injury . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19
Filing A Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20
Arbitration of Disputes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21
Administrative Information . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23
Election and Agreement Form . . . . . . . . . . . . . . . . . . . . . . . . . Back Cover

This booklet is the Summary Plan Description (SPD) for the H-E-B Work Injury Benefit Plan.

# Work Injury Benefit Coverage At A Glance

1

CISPDF www.fasoo.com

# Work Injury Benefit Coverage At A Glance

| Your Coverage Election | On The Job Accident Coverage Levels and Features | |
| --- | --- | --- |
| | *Comprehensive* OR Coverage Level | *Basic* Coverage Level |
| **Coverage Cost** | Paid by H-E-B | Paid by H-E-B |
| **Continued Income Benefit** Ensured While Unable to Work Starting the Fifth Day | 100% of pay for up to 10 years | No Benefit |
| **Medical Benefits** Through Selected Network Doctors and Hospitals up to Plan limits | 100% up to $2,000,000 ($2 million) | 90% up to $750,000 |
| **Accidental Death Insurance** The Amount Will Be Paid In 10 Annual Payments | $150,000 | No Benefit |

You choose either *Comprehensive* or *Basic* coverage by
filing a signed Election and Agreement Form
with your supervisor before the deadline.

If you have any questions regarding the Plan or coverage election, contact the H-E-B Risk
Management Department, 646 South Main Avenue, P. O. Box 839999, San Antonio, Texas
78283-3999 -- or call 1-800-205-PLUS.

2

# Why Two Choices — *Comprehensive* or *Basic* Coverage?

**H-E-B Replaced Workers' Compensation**

The Plan has a choice of coverage to offer Partners a high level of work injury benefits and provide H-E-B the same type of legal protection from being sued over a work injury that the Texas Workers' Compensation Act ("TWCA") provides to employers who are covered by that Act.

**Workers' Compensation Does Not Allow Employees To Sue**

The state-sponsored workers' compensation law requires participating employers to provide a state-determined minimum level of benefits. In return, the state law prevents covered employees from suing these employers over most work injuries.

Because H-E-B takes special interest in its Partners, the Company designed its own plan -- the Work Injury Benefit Plan -- to cover Partners who are injured on the job. H-E-B is not covered by TWCA.

**To Be Like Workers' Compensation, H-E-B Offers:**

For H-E-B to maintain the same type of protection from being sued over a work injury that the state's program provides, the Company offers a coverage choice -- one coverage that offers this protection and another that does not.

*Comprehensive* **— High Level Coverage And Limits The Right To Sue**

You can elect **Comprehensive** coverage. **Comprehensive** coverage will provide the specially designed high level of medical and income benefits and accidental death insurance policy. In exchange for receiving **Comprehensive** coverage, you agree to give up your right to sue H-E-B -- just as you would if H-E-B was covered by TWCA -- and you agree to arbitration of any disputes related to on-the-job injuries.

*Basic* **— Lower Coverage But Does Not Limit The Right To Sue**

Or, you can elect **Basic** coverage. **Basic** coverage provides less medical benefits, no income benefits and no accidental death insurance policy coverage. If you elect **Basic** coverage you do not give up your right to sue H-E-B.

3

## Enrollment Deadline

**New Partners
Have Seven
Days To Elect
Coverage**

You must turn in your signed and completed Election and Agreement Form to your supervisor by the seventh day following your first day of work. In other words, by no later than one week from your first day of work you must give your supervisor the Election and Agreement Form -- filled out and signed.

If you do not meet this deadline, you will automatically be covered by **Basic** -- and you will not be able to elect **Comprehensive** coverage.

If you are injured while working at H-E-B during your first week and you have not turned in your Election and Agreement Form, you will be automatically provided benefits under **Comprehensive** coverage.

**Elections Can
Not Be
Changed**

The coverage you choose -- **Comprehensive** or **Basic** -- when you turn in your completed and signed Election and Agreement Form -- will stay in effect for as long as you remain an H-E-B Partner. You cannot change the coverage. If you do not turn in the Election and Agreement Form by the deadline, you will have **Basic** coverage for as long as you remain an H-E-B Partner.

4

# Who Is Eligible And What Injuries Are Covered

**Who Is
Eligible**

All H-E-B Partners automatically participate in this Plan.  As a participant, your level of benefits is determined by whether you sign up for **Comprehensive** coverage or **Basic** coverage when you submit your Election and Agreement Form -- simply called "the Election."  If you do not make an election, you will automatically have **Basic** coverage.

**Who Pays For
Your Benefits**

H-E-B pays the entire cost of your coverage under this Plan.

**The Election**

If you sign up for **Comprehensive** coverage, you will be entitled to all the benefits described in this booklet (SPD) available for Partners **electing Comprehensive** coverage.  To be eligible to receive **Comprehensive** coverage under the Plan, you must elect it and sign the Election and Agreement Form at the back of this SPD.  By signing the Election and Agreement Form and electing **Comprehensive** coverage under the Plan, you agree to release H-E-B from any liability it may have as a result of your occupational injury, other than to provide you the **Comprehensive** benefits described in this SPD.  In addition, by signing the Election and Agreement Form and electing **Comprehensive** coverage, you agree to binding arbitration of all related disputes, claims or controversies including, for example, those that may arise with regard to the interpretation of the Election and Agreement Form or your eligibility for benefits under the Plan.  These arbitration provisions are defined more fully in the "Arbitration of Disputes" section of this booklet.

## What You Must Do To Receive
## *Comprehensive* or *Basic* Benefits

**Tell Your
Supervisor
Immediately
About An
Accident**

If you have an accident at work, let your supervisor know
IMMEDIATELY. Your supervisor will help you get to a Network doctor
or hospital for treatment and coordinate any paperwork.

If a Network doctor is not available, the Work Injury Benefit Coordinator
will help you find another doctor who is authorized by
H-E-B.

If your injury is an emergency and your supervisor is not available, seek
medical care at once.

**Steps You
Must Take To
Be Eligible
For Benefits**

If you have a covered work-related injury or illness while working at
H-E-B and seek medical attention from a doctor in the Work Injury Health
Care Providers Network, you will be eligible for **Comprehensive** or **Basic**
benefits -- depending on your prior election -- while you remain injured
provided that you:

- Report your injury to your supervisor IMMEDIATELY -- even if you do
  not believe you need to see a doctor;

- Submit to and pass the drug test when required by H-E-B policy;

- Use a Network doctor to coordinate your medical care -- you may
  choose any doctor in the Network -- see your supervisor for a list of
  Network doctors and health care providers;

**Use Doctor In
Work Injury
Care
Providers
Network For
All Your Care**

- Follow the instructions of the Network doctor who is treating you;

- Provide accurate information; and

- Report for work -- or light duty work if you elected **Comprehensive** --
  when approved by a Network doctor.

Your Network doctor will submit a statement regarding the nature and
extent of the work injury, the date it began, and the expected return to work
date. If there is a need for a second opinion, it will be arranged by the
Work Injury Benefit Coordinator.

A list of Network doctors and facilities is available from your supervisor
and is posted at your worksite.

## Covered Work-Related Injuries, Illnesses and Diseases

**What Type Of Illness Or Injury Is Covered**

The Plan covers a physical injury, illness or disease that:

- Occurred while in the course and scope of H-E-B employment;

- Is not attributable to any other cause; and

- Prevents you from performing the material duties of the job (as determined by H-E-B with the advice of one or more doctors — including their estimate of the date the injury began).

## Injuries Or Illnesses That Are Not Covered

**What Type of Injury Or Illness Is Not Covered**

- Caused by your violation of a safety policy, procedure or supervisor's instructions;

- Intentionally self-inflicted -- whether sane or insane;

- Occurred while you had used any amount of illegal drugs or alcohol -- or when you test positive for drug or alcohol use;

- Any care provided outside the Work Injury Health Care Providers Network unless approved by the Work Injury Benefit Coordinator, or in the case of a life-threatening emergency;

- Incurred while you are "on suspension;"

- Incurred as a result of, or in the act of committing a criminal act or misconduct;

- Caused by intention to injure another person;

- Related to horseplay, or if horseplay was a contributing factor of the injury;

- Arising from an act of another person who intended to injure you for personal reasons and not directed at you because of your employment;

- Arising from voluntary participation in an off-duty recreational, social, or athletic activity not constituting part of the work-related duties;

7

- Contracted, suffered or incurred as a result of any act of war, whether declared or undeclared, or as a result of service in the Armed Forces of the United States;

- Related to ordinary diseases to which the general public is exposed such as colds, flu, etc;

- A mental or emotional injury that arises from a personnel issue, including, but not limited to, a transfer, promotion, demotion, termination, or any disciplinary procedure.

## Pre-Existing Conditions Are Not Covered

In addition to other exclusions, the Plan does not cover an injury or illness related to any physical or mental condition that existed before either:

- This Plan became effective, or
- Your most recent date of H-E-B employment.

# Continued Income Benefits -- *Comprehensive* Coverage Only

**Income Replacement For Your Paycheck If You Elected *Comprehensive* Coverage**

If you elected **Comprehensive** coverage and you are unable to work due to a covered work-related injury, this Plan will provide certain income benefits. If you elected **Basic** coverage or the election has not been signed and returned, no income replacement benefits are payable.

**Comprehensive** income benefits are payable to you starting the **fifth calendar day** after you are injured. The benefit payment will be included in your next scheduled paycheck.

---

### *Comprehensive* Coverage Income Benefits

Benefits ensured by the Plan will equal 100% of your "average weekly pay" for each week you miss (due to a work injury that is covered) for up to 520 weeks (10 years) -- starting the fifth day. No benefits are payable for the first four days you miss after your accident.

---

For hourly Partners, "average weekly pay" is your total weekly regular pay for the thirteen (13) weeks just before you became injured, excluding vacation and sick days, divided by thirteen (13). If you are a newly hired hourly Partner, the total number of weeks you have worked for the Company (up to a maximum of 13) will be taken into account in the above formula.

For salaried Partners, your "average weekly pay" is based on your weekly regular salary in effect the day prior to your injury.

The continued income benefits are paid based on a five-day work week. If you are entitled to benefits for only part of that week, your average weekly pay will be divided by five (5) to determine your "daily benefit."

The income benefits paid are subject to taxes and various payroll deductions.

**An Example Of *Comprehensive* Coverage**

**An Example.** Joe, who elected **Comprehensive** coverage, is unable to work for twenty days due to a covered work injury. He receives medical attention from a doctor in the Network. Joe will have covered medical expenses paid at 100% up to $2 million in lifetime medical benefits.

Joe's average weekly pay is $250.

9

Joe will receive $250 for each full week he is unable to work and eligible for benefits (benefits start the fifth day). For any partial week he is eligible to receive benefits, he will receive $50 a day ($250 weekly pay divided by five). The benefit is subject to taxes and various payroll deductions.

**Basic**
**Coverage**

**Basic** coverage under this Plan includes medical coverage only paid at 90% up to $750,000 in lifetime benefits. No continued income benefits are payable under **Basic** coverage.

**An Example**
**of *Basic***
**Coverage**

**An Example.** Jane elected to be covered by **Basic** coverage. She is off work for ten work days due to a covered work injury. She receives medical attention from a doctor in the Network. Under **Basic** medical coverage, Jane's covered medical expenses are paid at 90% up to $750,000 in lifetime medical benefits.

Because Jane elected **Basic** coverage, she will not receive continued income benefits.

**How Your *Comprehensive* Coverage Income Benefit Is Paid When You Return To Light Duty Or Modified Work Status**

**When a**
**Network**
**Doctor**
**Releases You**
**To Return To**
**Work**

If a Network doctor says you can return to work on a light duty or modified work duty status, the amount you are paid (if you elected **Comprehensive** coverage) for employment during the period you receive benefits from this Plan will be counted as part of your benefit. In other words, the amount you are paid for working will be subtracted from the amount of your continued income benefit to maintain your "100% of pay" income.

10

Light duty work can include functions of your job or other jobs which you are able to perform considering the type and extent of your injury (as determined by the Plan Administrator) in consultation with the Network attending doctor.

Light duty work can continue for a limited time as described in H-E-B's "Light Duty Policy" -- see that policy description for more details and restrictions.

## How The Plan Benefits Are Reduced If You Are Entitled To Other Benefits

**Offset For Other Benefits**

If you receive benefits from other sources than the benefits paid under this Plan, your income benefits paid by this Plan will be reduced. The benefit will be reduced by any employer-provided disability, accident, dismemberment or other benefit, Social Security payments, railroad retirement act benefits, workers' compensation, occupational disease or similar benefits you are entitled to under a statutory law or government benefits payable as a result of the work injury, so that you will maintain exactly the amount of pay income allowed under this Plan.

11

# Medical Benefits

H-E-B is committed to providing a high level of medical coverage to help protect you against the financial hardship of a covered work injury.

**Comprehensive Coverage**

If you elected **Comprehensive** coverage, the Plan will pay 100% of covered medical expenses.

**Basic Coverage**

If you elected **Basic** coverage -- or failed to complete and return a signed Election and Agreement Form -- the Plan will pay 90% of covered medical expenses. You will be responsible for paying the remaining charges.

**Key Elements In Medical Coverage**

Both **Comprehensive** and **Basic** pay benefits for the same covered services -- up to the Maximum Medical Benefit -- if:

• Your injury or illness is work-related -- it occurred while in the course and scope of your employment, and other conditions are satisfied as to work-related occupational diseases or illnesses;

• You use and coordinate all your medical care with a Network doctor (except for life-threatening emergencies or if other care is approved in advance by the Work Injury Benefit Coordinator); and

• You follow the Plan's requirements.

**Maximum Medical Benefits**

The Plan limits the maximum medical benefits that will be paid during a Partner's lifetime for all expenses under the plan. If you elect **Comprehensive** coverage, you have up to $2,000,000 ($2 million) in medical benefit coverage. If you have the **Basic** coverage you have up to $750,000 in medical benefit coverage.

## Covered Medical Services and Supplies When Coordinated Through Network Doctors

**Covered Services**

The following covered medical services required to treat a work injury or illness under both **Comprehensive** and **Basic** coverage include:

• Services provided by or coordinated by an authorized Network health care provider;

• Hospital room and board at the semi-private room rate. However, if the attending doctor orders a private room, it is covered by the Plan;

12

- Hospital intensive care unit charges;

- Hospital emergency room services;

- Other hospital expenses;

- Skilled nursing facility care;

- Surgeon's and other authorized health care provider's expenses;

- Anesthesia services, when performed by a licensed anesthesiologist or certified registered nurse anesthetist in connection with a surgical procedure;

- Surgery for the treatment of fractures and dislocations of the jaw or the replacement of sound natural teeth resulting from a work injury provided you received treatment for this condition within seven days of the injury;

- Cosmetic surgery to correct and restore the condition to a reasonable pre-injury appearance and function;

- Outpatient surgery;

- Home health care services; and

- Hospice care services.

> Any health care treatment or service that is not provided by -- or not coordinated by -- a doctor from the Network is not covered by the plan unless authorized by the Work Injury Benefit Coordinator.

## Other Types Of Covered Services

### Other Covered Medical Services and Supplies When Coordinated Through Network Doctors

- Physical and occupational therapy as approved by the Work Injury Benefit Coordinator;

- Medically necessary ground ambulance, and air ambulance;

- Initial emergency services even without authorization or approval by the Work Injury Benefit Coordinator;

13

- Generic prescription drugs -- unless a brand name is requested by the attending Network doctor, or it is dispensed at an H-E-B Pharmacy or authorized provider;

- Surgical supplies dispensed and billed by the hospital or attending Network doctor.

- Work-related occupational diseases or illnesses directly related to:

  1) Lead poisoning

  2) Circulatory diseases such as heart attack, stroke and aneurysm which can be identified as:

     (a) occurring at a definite time and place at the worksite, and

     (b) caused by a specific event occurring in the course and scope of employment, and

     (c) not triggered solely by emotional or mental health factors, unless it was caused by a sudden work environmental factor.

  3) Musculoskeletal disease or illness that occurred as a result of repetitious, physically traumatic activities that occur over time and arise <u>only</u> out of and in the course and scope of H-E-B employment.

**Medical Benefit Limits**

A lifetime Maximum Medical Benefit of $2,000,000 ($2 million) for **Comprehensive** coverage and $750,000 for **Basic** coverage applies to all medical benefits from this Plan.

## Covered Equipment and Supplies Coordinated Through the Network That Requires Pre-Approval

**Services and
Supplies
Requiring
Pre-Approval**

To receive the following covered equipment and supplies, you must contact the Work Injury Benefit Coordinator in advance for pre-approval:

- Chiropractic services -- only when authorized by a Network doctor -- including the services of a Doctor of Osteopathic Medicine up to six weeks of therapy per work injury, subject to ongoing review and approval of the Work Injury Benefit Coordinator. (Maximum of three visits per week);

- Orthotics, arch supports, corrective shoes, corrective appliances or any other similar items;

- Rental, or purchase of a wheelchair, iron lung, or other durable medical equipment designed primarily for therapeutic purposes;

- Maintenance of internal and external durable medical equipment, or replacement if necessitated by normal wear and tear;

- External hearing aid for ear complications from a work injury, not to exceed $500 (including professional services) per hearing aid; and

- One pair of eyeglasses up to $125 (and one eye examination) due to a work injury to the eye.

## Medical Services Not Covered

**Not Every
Type Of
Expense Is
Covered By
The Plan**

While the Plan provides benefits for many medical expenses, there are some expenses which are not covered by the Plan. Charges not covered by the Plan include:

- Services or charges related to a pre-existing condition(s) (see page 8);

- Charges incurred before your date of participation in the Plan, or date of injury, or rendered after your medical benefits terminate;

- Expenses that are not medically necessary, as determined by the Plan Administrator;

- Services that have not been authorized by the Plan Administrator, or have not been pre-approved when required (see above);

- Services or supplies for personal comfort or convenience, such as a television, radio, admission kits, guest meals, etc.;

- Services for your illness or injury related to an accident for which you either refused to take or failed to pass a drug or alcohol test;

- Fraudulent claims, or inaccurate claims;

- Services, supplies and replacement for the purchase or fitting of hearing aids, dentures or dental appliances, or eyeglasses except when indicated as covered benefits;

- Dental services and supplies, unless required to repair natural teeth damaged as the result of a work injury;

- Services provided by a rest home, convalescent facility, or nursing home that only assists with activities of daily living such as bathing, dressing, walking, eating, preparing special diets, or the supervision of taking medications;

- Services or supplies for any illness or accidental injury for which benefits are recovered or found to be recoverable under Workers' Compensation, any occupational law or any other similar law;

- Acupuncture, behavior modification and biofeedback;

- Canceled appointment charges;

- Services or supplies for conditions caused by, or arising out of an act of war, armed invasion or aggression;

- Non-prescription drugs, medications or supplies;

- Medical procedures, drugs or medications that are considered experimental, investigative or for the purpose of research;

- Self-administered services;

- Charges resulting from participation in the commission of any crime;

- Treatment of complications from a noncovered surgery;

- Cosmetic surgery except when needed to correct damage caused by a work injury, as described in the medical section;

16

- Follow up services related to emergency care which were not authorized or approved by the Plan Administrator;

- Custodial care, unless approved by the Plan Administrator;

- Services for training or educational purposes, unless approved by the Plan Administrator;

- Services related to chemical dependency treatment;

- Services or supplies to diagnose or treat visual impairment as an illness; and

- Medical expenses in excess of $2,000,000 ($2 million) for **Comprehensive** coverage or $750,000 for **Basic coverage.**

## Accidental Death Benefits and Funeral Expenses

*Comprehensive Coverage*

If you elect **Comprehensive** coverage and die as a direct result of a covered work injury, your beneficiary will be entitled to a death benefit. The death benefit will be $150,000 paid to your beneficiary in equal installments over a 10-year period. If you are married at the time of your death, your spouse is automatically your beneficiary. If you are not married, you can name or change your beneficiary by completing the Accidental Death Beneficiary Form and returning it to your supervisor, or see that person for additional forms. If you do not name a beneficiary and you are not married, your estate will be your beneficiary.

Also, the Plan will pay the actual burial expenses up to $5,000.

*Basic Coverage*

No death benefits or funeral expenses are payable under **Basic** coverage.

17

CVsPDF - www.festo.com

# When Your Benefits End

Benefits paid under the Plan will stop on the earliest of when you:

- No longer meet the eligibility requirements, or fail to meet the requirements of this Plan;

- For income benefits, are no longer unable to work as determined by the Plan Administrator, with advice from a Network doctor;

- Die, except as it relates to the death benefit and funeral expense benefit;

- For medical coverage, reach the Maximum Medical Benefit amount;

- For income benefits, reach the 10 year (520 week) maximum benefit period; or

- Are not eligible for income benefits (**Comprehensive** coverage only) as described on page 9.

Partners who elected **Basic** coverage -- or who did not return a completed and signed Election and Agreement Form -- do not receive income benefits at any time.  Also, there are no death benefits or funeral expenses paid under **Basic** coverage.

18

# Drug Testing After Injury

***Comprehensive***
**and *Basic***
**Coverage**

Drug testing will be performed after each injury.  This testing is in accordance with the drug testing conducted under H-E-B's Drug Testing Program.

> Partners who refuse to be tested -- or who test positive -- will not receive benefits under this Plan.

# Filing A Claim

***Comprehensive and Basic* Coverage**

If you have an illness or injury which occurs on the job, you must **immediately** notify your supervisor.

Your supervisor has a list of the Network facilities and doctors in the area. Your supervisor will provide a copy if you request it.

When you receive medical attention from the doctors who are a part of the Network, they will file the claim forms on your behalf. As soon as possible following any emergency treatment by a non-Network doctor, call 1-800-205-PLUS.

If a claim is denied in whole or in part, the denial will be submitted to you in writing, explaining the basis for denial of the claim and will include the following.

• The Plan provision(s) upon which the denial is based;

• An explanation of the procedures for reviewing claims; and

• A description of any additional information that would be useful in reconsidering the claim of you or a beneficiary.

If a claim is denied, a written appeal requesting further review may be submitted to the Plan Administrator within 60 days of the date of the denial.

After receiving a request for review, the Plan Administrator will render a final decision no more than 120 days later. If you wish, you may be represented at your own expense by any other person to present your case. The Plan Administrator's ultimate decision will be submitted in writing setting forth all specific information on which the decision is based.

If you elected **Comprehensive** a review can be submitted to arbitration (see page 21).

# Arbitration of Disputes
# for Partners Electing *Comprehensive* Coverage

**Agreement
Applies If You
Elect
*Comprehensive*
Coverage**

Partners electing **Comprehensive** and signing the Election and Agreement
Form at the end of this SPD are agreeing to submit all disputes, claims or
controversies, as defined in the Agreement, to binding arbitration consistent
with the following arbitration provisions. This arbitration provision does
not apply if you elect **Basic** coverage or do not turn in a completed
Election and Agreement Form.

## Governed by Federal Arbitration Act

**Governed By
Federal
Arbitration
Act**

Arbitration is pursuant to and governed by the Federal Arbitration Act, 9
U.S.C. §§ 1-14, (the "Act"). Except to the extent modified, all arbitration
proceedings shall be conducted in accordance with the Commercial
Arbitration Rules ("Arbitration Rules") of the American Arbitration
Association ("AAA"). Under Section 9 of the Act, a judgment of the
United States District Court for the Western District of Texas, San Antonio
division, or of any other court of competent jurisdiction, may be entered
upon an award made pursuant to arbitration.

## Appointment of Neutral Arbitrator

**Appointment
of Neutral
Arbitrator**

A neutral arbitrator shall be appointed in the manner prescribed in Rule 13
of the Arbitration Rules. The decision of the arbitrator shall be final and
binding on all parties.

## Arbitration Procedures

Arbitration
Procedures

Unless modified by the arbitrator for good cause, the following procedures
shall be followed in addition to those set forth within the Rules themselves.
(1) At least twenty (20) days before the arbitration, the parties must
exchange lists of witnesses, including any experts, and copies of all exhibits
intended to be used at the arbitration. Except for good cause, the arbitrator
may refuse to allow into evidence the testimony of any witness not timely
disclosed. In addition, except for good cause, the arbitrator may exclude
from evidence any exhibit not previously tendered to the opposing party in

**21**

a timely fashion.  (2) Each party may take the deposition of one individual and any or all expert witnesses designated by another party.  Additional discovery, including but not limited to interrogatories and request for production of documents, medical or psychological examinations, may be had, upon a showing of substantial need, where the arbitrator so orders.  (3) The arbitrator shall apply the substantive law (and the law of remedies, if applicable) of the state of Texas or federal law, or both, as applicable.  (4) The arbitrator shall have the authority to entertain a motion to dismiss and/or a motion for summary judgment by any party and shall apply the standards governing such motions under the Federal Rules of Civil Procedure.  (5) Rule 31 of the Rules is amended to allow for the use of sworn depositions taken in conformity with the Federal Rules of Civil Procedure.  (6) The results of the arbitration, unless otherwise agreed by the parties or ordered by the arbitrator on motion, are not confidential and may be reported by any news agency or legal publisher or service.

## Payment of Arbitration Fees by Partner

**Payment of Arbitration Fees By Partner**

The Partner shall pay one half of the fees and cost of the arbitrator.  Funds or other appropriate security shall be posted by each party for its share of the arbitrator's fee, in an amount and manner determined by the arbitrator, ten (10) days before the first day of hearing.  Each party shall pay for its own cost and attorneys fees, if any.  However, if any party prevails on a statutory claim which affords the prevailing party attorney's fees, or if there is a written agreement providing for fees, the arbitrator may award reasonable fees to the prevailing party.

# Administrative Information

In 1974, Congress passed the Employee Retirement Income Security Act (ERISA) to protect your interests and those of your beneficiaries under plans like those described in this booklet. As ERISA requires, this section gives you additional administrative information about your Plan. By electing Comprehensive coverage and signing the Election and Agreement Form, you are affecting your rights under ERISA as set forth in that agreement. Specifically, by electing Comprehensive coverage, you are agreeing to resolve your disputes through binding arbitration and, thus, giving up your right to sue H-E-B in federal court.

**Plan Name**

The name of this Plan is H. E. Butt Grocery Company Work Injury Benefit Program.

**Plan Sponsor (Employer)**

H. E. Butt Grocery Company is referred to as H-E-B, Employer or the Company throughout this booklet.

**Plan Sponsor's Identification Number**

74-0537175

**Plan Number**

506

**Type of Plan**

A welfare benefit plan providing medical, income and other benefits due to a work injury.

**Claims Administrator**

H. E. Butt Grocery Company
646 South Main Avenue
San Antonio, Texas 78204
Telephone (210) 246-8000

**Plan Administrator**

The Plan Administrator is:

H. E. Butt Grocery Company
646 South Main Avenue
San Antonio, Texas 78204
Telephone (210) 246-8000

23

The Plan Administrator has complete and final discretionary authority to interpret the Plan and control over the operation and administration of the Plan, including interpretation of all Plan Documents, Plan summaries, decisions as to who is eligible to participate, what expenses are covered by the Plan and all related questions and matters that arise under the Plan. H-E-B may choose to hire any third party to perform specified duties in relation to the Plan.

| | |
|---|---|
| Type of Funding/ Administration | The Plan is funded through the H. E. Butt Grocery Company Welfare Benefit Trust (the "Trust"), which in turn is administered by the qualified trustee under the Trust. The Welfare Benefit Trust is funded by employer contributions, trust earnings and any proceeds of accidental death and dismemberment policy proceeds. Accidental death and dismemberment benefits are funded through an insurance carrier. Upon meeting the dismemberment benefit provisions of the policy, proceeds will be paid by the insurance carrier to the H. E. Butt Grocery Company, Inc. Welfare Benefit Trust. Death benefits will be paid directly by the carrier to the beneficiary, or the individual's estate. The Plan is administered by the Plan Administrator. |
| Plan Trustees | The Plan Trustees are:<br>Board of Trustees of the H-E-B Work Injury Benefit Trust<br>H.E. Butt Grocery Company<br>646 South Main Avenue<br>San Antonio, Texas  78204<br>(210) 246-8000 |
| Agent for Service of Legal Process | Mr. Wesley D. Nelson<br>Vice President and Secretary<br>H. E. Butt Grocery Company<br>646 South Main Avenue<br>San Antonio, Texas  78204<br>Service of legal process may also be served on the Plan Administrator. |
| Date of Plan Year End | October 31 |

24

| | |
|---|---|
| **Coordination of Benefits** | When you are covered by this Plan as well as another medical plan that covers you for the injuries sustained under this Plan, the two plans are coordinated to ensure that the combined benefits do not exceed 100 percent of the allowable expenses. This provision is called "Coordination of Benefits." |
| | If you have health coverage available from another employer's medical or dental plan or similar arrangement, group coverage sponsored by a school or other educational institution, group coverage under franchise organizations (including a state or federal health program), you will be asked to indicate this on your claim form. The H-E-B Work Injury Benefit Plan will then coordinate its payments with similar benefits payable under the other plan. The Plan will also coordinate with any medical benefits received from automobile first-party medical coverage and no-fault motor vehicle reparations insurance. The determination of which plan will pay primary and the plan that pays secondary is as follows: If you have coverage under another plan, and that plan has no coordination of benefits provision, that plan will pay primary and this Plan will pay secondary. Otherwise, the plan covering the individual for the longest period of time will be primary. |
| **Certain Continuation Rights** | In certain instances, you may be eligible to continue the medical coverage offered under this program if a qualifying event occurs under the rules of the Consolidated Omnibus Budget Reconciliation Act. |
| | See the Benefits Department and your initial health continuation coverage notice for more information. |
| **Relationship of Work Injury Health Care Providers Network** | The Work Injury Health Care Providers Network is an independent contractor and does not have an agency or employment relationship with H-E-B. Doctors and hospitals in the Network have contracted with H-E-B to provide health care services at a preferred rate. |

**Reimbursement of Benefits When Another Person Causes Your Injury; Rights to Subrogation**

If you become ill or injured due to the fault of other people or a "third party", the third party shall be responsible for any medical or income costs which may result. When this is the case and you have already been paid benefits from this Plan, the Plan must be reimbursed with the proceeds from any judgment, settlement or other related payments (including proceeds from any uninsured motorist coverage or other insurance). You are responsible to advise the Work Injury Benefit Coordinator in writing within 60 days of any claim that has been made against other people or any "third party" as a result of the illness or injury. If you fail to reimburse the Plan, future Plan benefits will be withheld until you or your family member's claims equal the amount of money owed to the Plan, including a reasonable charge for interest.

When you accept benefit payments from the Plan, you also agree to allow the Plan to recover the amounts paid by the Plan from a third party, and you give the Plan the right to subrogate any recovery from the third party. You may be required to sign forms to that effect at or near the date you are injured, and are required to notify the Plan that a third party was involved in the injury or illness. Failure to sign the forms will make you ineligible for any Plan benefits related to the illness or injury.

The Plan may intervene in any legal action you or your beneficiary bring against a third party or insurance company. In addition, the Plan may collect money directly from a third party by filing a lien on the proceeds with the third party, the third party's agent, the insurance company or the court.

If you or your beneficiary settles or makes a compromise on a claim with a third party so that the amount the Plan is reimbursed is less than the lien, or so that if a third party or its insurance carrier is relieved of any future liability for medical expenses, then you or your beneficiary will not receive any benefits from the Plan in connection with the condition related to that liability claim, unless the settlement has been pre-approved in writing by H-E-B.

**Not An Employment Contract**

The Plan is not to be considered an employment contract between you and the Company. The Plan does not guarantee you the right of continued employment by the Company nor does it limit the Company's right to discharge you or any other Partner.

| If the Plan Changes or Ends | Although H-E-B expects to continue the Plan indefinitely, the Continuous Improvement Committee reserves the right to amend or terminate the Plan at any time.  No amendment or termination of the Plan will affect any claim for expenses incurred prior to the date the amendment or termination is adopted, except as permitted by law.  No amendment may divert any part of the assets of the trust fund for purposes other than providing benefits under the Plan and paying the reasonable expenses of administering the Plan. |

If the Plan is terminated, no part of the trust fund will revert to the Company except as provided by law.

Even though you may receive benefits from the Plan, this does not mean you have a vested right to have coverage continue during either your employment or retirement.

**Plan Documents**

This booklet is intended to be an easy-to-understand summary of the Plan.  But if there are any differences between the information in this booklet -- called Summary Plan Description (SPD) -- and the Plan document, the Plan Document is the final authority.

All benefits are subject to the provisions of the Plan Document, and the exhibits contained therein.  No one will accrue any rights because of any statement in or omissions from this booklet.  In addition, no statement or omission in this Summary Plan Description will modify or affect the above documents.

27

## Your Rights Under ERISA

The Employee Retirement Income Security Act of 1974 (ERISA) guarantees certain rights and protections to participants of employee benefit plans. As required by federal law and regulations, the following is a statement of your ERISA rights.

- You may examine without charge all Plan Documents, including the single written document, any insurance contracts, annual reports, Summary Plan Descriptions, and other documents filed with the Department of Labor. The documents are available for your review in the Plan Administrator's office.

- If you want a personal copy of Plan Documents or related material, you should send a written request to the Plan Administrator. A reasonable charge will be made for reproduction of these materials.

The people responsible for operating the Plan are called fiduciaries. The fiduciaries of these plans have an obligation to administer them prudently and to act in the interest of the plan participants. No one may discriminate against you in any way to prevent you from receiving benefits or exercising your rights under ERISA.

If you believe that your ERISA rights have been violated, you may file suit or, if you have elected Comprehensive coverage, submit your claim to binding arbitration. Included among the violations for which you may request arbitration or file suit are:

- Improper denial of benefits;

- Misuse of Plan funds by a fiduciary or discrimination against you for asserting your rights (depending on your election you may seek assistance from the Department of Labor or request arbitration or file suit in federal court); and

- Failure of the Plan Administrator to provide materials within 30 days after receiving your written request, unless this is because of reasons beyond the Plan Administrator's control (depending on your election, you may file suit in federal court or request arbitration; if a violation exists, the court or arbitrator may

28

require the Plan Administrator to provide the materials and to pay you up to $100 for each day's delay).

The court or arbitrator will decide who should pay court costs and legal fees. For example, if your claim is successful, the court or arbitrator may order the person you have sued to pay these costs and fees. If you lose, or if the court or arbitrator finds your claim to be frivolous, you may be ordered to pay these costs and fees.

If you have any questions about the foregoing statements or about your rights under ERISA, you should contact the nearest Area Office of the U.S. Labor-Management Service Administration, Department of Labor.

# ELECTION AND AGREEMENT FORM

## COMPREHENSIVE COVERAGE:

To elect Comprehensive Coverage and to be eligible for Comprehensive Benefits, you must sign the following Election of COMPREHENSIVE Benefits, Release, Waiver, Indemnity and Arbitration Agreement.

## BASIC COVERAGE:

If you are electing Basic Coverage and declining Comprehensive Coverage, do not sign this Agreement. Instead, you should place your signature in the Election of Basic Coverage section to indicate your election of Basic Coverage.

### ELECTION OF COMPREHENSIVE BENEFITS
### RELEASE, WAIVER, INDEMNITY, AND ARBITRATION AGREEMENT

NOTICE: BY SIGNING THIS AGREEMENT, YOU AGREE TO RELEASE AND WAIVE CERTAIN RIGHTS TO SUE YOUR EMPLOYER, THE TRUST AND THE TRUSTEES OF THE H. E. BUTT GROCERY COMPANY WELFARE BENEFIT TRUST, THE PLAN, AND THE PLAN ADMINISTRATOR IN EXCHANGE FOR THE AGREEMENT TO PROVIDE CERTAIN BENEFITS THROUGH THE TRUST. YOU AGREE TO INDEMNIFY YOUR EMPLOYER AND THE RELEASED PARTIES IN CERTAIN CIRCUMSTANCES AND YOU AGREE TO ARBITRATE ALL FUTURE DISPUTES. THIS AGREEMENT AFFECTS YOUR LEGAL RIGHTS! READ THIS AGREEMENT CAREFULLY AND MAKE SURE YOU UNDERSTAND IT BEFORE SIGNING IT!

This Agreement is made by and between _____ (the "Partner") and the Trustees of the H.E. Butt Grocery Company

[Print Your First Name, Middle Initial and Last Name]

Welfare Benefit Trust (the "Trustee").

As set forth above in this Summary Plan Description ("SPD"), in order to receive and in exchange for Comprehensive Benefits under the Plan through the Trust, Partners are required to sign this election of Comprehensive benefits coverage, release, waiver, indemnity and arbitration agreement (the "Agreement") as a condition of eligibility for the Comprehensive benefits coverage under the Plan.

1.    DEFINITIONS

The definitions of terms contained in this Agreement shall, unless otherwise indicated, have the meaning attributed to them under this SPD.

2.    H-E-B DOES NOT PROVIDE WORKERS' COMPENSATION BENEFITS

H-E-B has elected to discontinue coverage under the Texas Workers' Compensation Act ("TWCA") effective September 15, 1994. Therefore, effective September 15, 1994, H-E-B shall be a non-subscriber to the TWCA, and the Partner shall not be entitled to benefits under the TWCA.

3.    PARTNER'S ELECTION OF COMPREHENSIVE BENEFITS COVERAGE, RELEASE, WAIVER AND INDEMNITY AGREEMENT

Partner, individually and on behalf of heirs and beneficiaries, elects to receive Comprehensive benefits coverage under the Plan and agrees to irrevocably and unconditionally release all claims and causes of action whether now existing or arising in the future and to waive the right to sue H-E-B, the Plan, the Plan Administrator, the Trust and/or the Trustees for the occupational injury, death or disease of the Partner arising out of and in the course and scope of employment, in exchange for the right to receive Comprehensive benefits coverage under the terms of the Plan. In addition to H-E-B, the Plan, the Plan Administrator, the Trust and the Trustees, this release shall also extend to and comprise their owners, predecessors, successors, agents, officers, employees, representatives, subsidiaries and affiliates (the "Released Parties"). The SPD attached to the Agreement and the Plan and Trust, which are available for your review, are incorporated in this Agreement by reference. These documents describe the benefits and conditions under which both Basic and Comprehensive benefits are provided under the Plan and through the Trust.

Partner, individually and on behalf of heirs and beneficiaries, agrees that recovery from H-E-B as well as other Released Parties for occupational injury, death, or disease, arising out of and in the course and scope of employment, is limited to benefits provided by the Plan. The Plan states the limit of H-E-B's and other Released Parties' liability to the Partner or the Partner's heirs or beneficiaries in the event of a claim against H-E-B or other Released Parties. In the event the Partner suffers an occupational injury or an occupational disease, the Partner agrees to undertake health care in compliance with the Plan as a condition to obtaining benefits under the Plan and Trust.

Partner, individually and on behalf of heirs and beneficiaries, agrees to INDEMNIFY, DEFEND, AND HOLD HARMLESS (including all costs and attorney's fees), H-E-B, the Plan Administrator, the Trust, the Trustee and /or the Released Parties from any claim, demand, or lawsuit by the Partner or any person or entity claiming by, through, or under the Partner, for occupational injury, death or disease of the Partner arising out of and in the course of employment, whether caused or contributed to by the negligence or gross negligence of H-E-B or other Released Parties, except for claims filed pursuant to the Plan.

4.    ARBITRATION

It is agreed that any and all disputes, claims, (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Agreement, the Plan, the Partner, or the Trust or to the occupational injury, death or disease of Partner shall be submitted to final and binding arbitration under the Federal Arbitration Act, in accordance with the terms and conditions outlined in the SPD under the heading "Arbitration of Disputes". The claims covered by this agreement to arbitrate include, but are not limited to, those which relate to the following:

a.    The formation, application and interpretation of this Agreement.
b.    Eligibility for benefits from the Trust, coverage under the Plan or claims for damages or monetary award.
c.    That H-E-B has discharged or in any manner discriminated against Partner because Partner in good faith filed a claim, hired a lawyer to represent him or her in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Agreement, the Plan or the TWCA, or has testified in any such proceeding.


EXHIBIT "A"

### 5.    NOT AN EMPLOYMENT AGREEMENT

This Agreement is not, and shall not be construed to be, an employment agreement or a contract of employment.  This Agreement does not alter the "at will" status of Partner's employment.

### 6.    TERMINATION

H-E-B and the Trustees reserve the right to amend or terminate the Plan.  Non-material changes, increased benefits, procedural changes, and changes that do not apply to Partner will not terminate this Agreement and it shall remain in full force and effect.

### 7.    PARTNER REPRESENTATIONS

Partner warrants and represents that no promise or representation of any kind has been made to the Partner except as described in the Agreement.  Partner further warrants and represents that the Partner has entered into this Agreement voluntarily without duress or coercion and acknowledges that he or she has been given the opportunity to discuss this Agreement with his or her private legal counsel and has availed himself or herself of that opportunity to the extent Partner wishes to do so.

### 8.    SURVIVABILITY

Should one or more provisions of this Agreement, be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by a decree of a court of competent jurisdiction, such invalidation of such provision or provisions hereof shall not affect the remaining portions of this Agreement.

This Election of Comprehensive Benefits, Release, Waiver, Indemnity, and Arbitration Agreement has been executed this _____ day of _____, 19__.

| | |
|---|---|
| **H. E. BUTT GROCERY COMPANY** | By: _____   _____ |
| **WELFARE BENEFIT TRUST** |        Partner's Signature     Partner's Social Security Number |

_____
For the Trustees

Witness or Attest by _____

H. E. Butt Grocery Company hereby acknowledges and consents to the above Agreement and agrees to be bound by all of its terms, including but not limited to, the arbitration process contained in paragraph 4 herein.

Executed this _____ day of _____ 19__.

H. E. BUTT GROCERY COMPANY

By: _____

---

### ELECTION OF BASIC COVERAGE

**I have elected Basic Coverage and have declined Comprehensive Coverage.**

_____
Partner's Signature and Date

_____
Partner's Social Security Number

---

CONSENT OF PARENT OR GUARDIAN OF PARTNERS WHO ARE YOUNGER THAN AGE 18

I, _____, as parent or legal guardian of _____, the Partner whose signature appears above do hereby consent to and agree to be bound by the above Election Form and Agreement on behalf of the Partner.

EXECUTED this ___ day of _____, 19__.

Parent's Signature: _____
Print Name: _____
Relationship to Partner: _____

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL SALDANA                     §
                                   §
V.                                 §    CIVIL ACTION NO. B-00-1491
                                   §
H. E. BUTT GROCERY COMPANY         §

## AFFIDAVIT

Before me, the undersigned authority personally appeared, Carmen Gellhausen,

who, being by me duly sworn deposed as follows:

1.    My name is Carmen Gellhausen. I am of sound mind, capable of making
      this Affidavit and have personal knowledge of the facts stated herein:

2.    I am the Risk Manager for H.E. Butt Grocery Company and a custodian
      of records for H.E.B. Risk Management.

3.    Attached as Exhibit "A" is an exemplar Election and Agreement form
      which is attached as the last page of the H.E.B. Work Injury Benefit Plan
      Summary Plan Description booklet. Before an employee is entitled to
      receive Comprehensive benefits, the employee must sign this Election
      and Agreement form. As a condition to receive benefits under the
      Comprehensive plan, an employee agrees to arbitrate any and all disputes
      related to an occupational injury or benefits under the Plan.

4.    Attached as Exhibit "B" is a print out of the H.E.B. PNAT screen. This is
      an internal record of H.E.B. reflecting the election of coverage chosen by
      any particular employee. This document confirms that the Plaintiff in this
      suit Daniel Saldaña, elected to receive Comprehensive benefits under the
      H.E.B. Work Injury Benefit Plan and agreed to arbitrate all disputes
      relating to eligibility for benefits under the Plan.

5.    Daniel Saldaña was hired in September of 1994. During this time, all
      Election and Agreement forms signed by H.E.B. employees were
      separated from the new hire paperwork and delivered to the Risk
      Management Department. A word processor would input information
      regarding each respective employees' election of benfits. This
      information was used to populate the information included the PNAT
      screen. The operator would input the employee's social security number,
      identify whether an Election and Agreement Form was received from that



EXHIBIT
"D-2"

employee and identify the election of coverage made by that employee.

6.     The "form received" portion of the PNAT screen attached as Exhibit "B" states whether an Election and Agreement Form was received by the employee as identified by the employee's social security number. "Y" is an abbreviation for "yes" and establishes the operator physically  had Daniel Saldana's (SS # 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) Election and Agreement Form in his/her possession at the time the information was entered. The "Type Coverage" section has the allowed for 3 abbreviations: B/C/SP.  If an employee selected Basic Coverage a "B" would be entered.   If an employee selected Comprehensive Coverage a "C" would be entered.  If an employee did not make either election, "SP" would be entered (selection pending).  If a conflict existed with any election (i.e. if partner elected both Basic and Comprehensive) no entry would be made.

7.     Exhibit "B" indicates Daniel Saldaña (SSN# 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) elected to receive Comprehensive benefits pursuant to the H.E.B. Work Injury Benefit Plan.

8.     Exhibits "A" and "B" are kept by H.E. BUTT GROCERY COMPANY in the regular course of business and it was in the regular course of business of H.E. BUTT GROCERY COMPANY for an employee or representative of H.E. BUTT GROCERY COMPANY with knowledge of the act, event, condition, opinion or diagnosis, recorded to make the record or to transmit information thereof to be included in such records; and the records were made at or near the time or reasonably soon thereafter. The records attached hereto are exact duplicates of the originals.

9.     The H.E.B. Work Injury Benefit Plan paid $4,946.22 in medical benefits and $7,096.88 in indemnity benefits on behalf of Daniel Saldaña.

10.    These benefits were paid in accordance with Mr. Saldaña's Election to receive Comprehensive benefits pursuant to the Work Injury Benefit Plan. The benefits were paid after Mr. Saldaña elected to receive comprehensive benefits and after he sustained an injury on November 18, 1998.

Further, affiant sayeth not.

Further, affiant sayeth not.

CARMEN GELLHAUSEN

SUBSCRIBED AND SWORN TO before me on the _27th_ day of July, 2001 by CARMEN GELLHAUSEN.

NOTARY PUBLIC



OLGA L. DAVILA
MY COMMISSION EXPIRES
September 30, 2003

# ELECTION AND AGREEMENT FORM

<u>COMPREHENSIVE COVERAGE</u>:

    To elect Comprehensive Coverage and to be eligible for Comprehensive Benefits, you must sign the following Election of COMPREHENSIVE Benefits, Release, Waiver, Indemnity and Arbitration Agreement.

<u>BASIC COVERAGE</u>:

    If you are electing Basic Coverage and declining Comprehensive Coverage, do not sign this Agreement.  Instead, you should place your signature in the Election of Basic Coverage section to indicate your election of Basic Coverage.

### ELECTION OF COMPREHENSIVE BENEFITS
### RELEASE, WAIVER, INDEMNITY, AND ARBITRATION AGREEMENT

<u>NOTICE:  BY SIGNING THIS AGREEMENT, YOU AGREE TO RELEASE AND WAIVE CERTAIN RIGHTS TO SUE YOUR EMPLOYER, THE TRUST AND THE TRUSTEES OF THE H. E. BUTT GROCERY COMPANY WELFARE BENEFIT TRUST, THE PLAN, AND THE PLAN ADMINISTRATOR IN EXCHANGE FOR THE AGREEMENT TO PROVIDE CERTAIN BENEFITS THROUGH THE TRUST.  YOU AGREE TO INDEMNIFY YOUR EMPLOYER AND THE RELEASED PARTIES IN CERTAIN CIRCUMSTANCES AND YOU AGREE TO ARBITRATE ALL FUTURE DISPUTES.  THIS AGREEMENT AFFECTS YOUR LEGAL RIGHTS!  READ THIS AGREEMENT CAREFULLY AND MAKE SURE YOU UNDERSTAND IT BEFORE SIGNING IT!</u>

    This Agreement is made by and between _____ (the "Partner") and the Trustees of the H.E. Butt Grocery Company

[Print Your First Name, Middle Initial and Last Name]

Welfare Benefit Trust (the "Trustee").

    As set forth above in this Summary Plan Description ("SPD"), in order to receive and in exchange for Comprehensive Benefits under the Plan through the Trust, Partners are required to sign this election of Comprehensive benefits coverage, release, waiver, indemnity and arbitration agreement (the "Agreement") as a condition of eligibility for the Comprehensive benefits coverage under the Plan.

    1.      DEFINITIONS

    The definitions of terms contained in this Agreement shall, unless otherwise indicated, have the meaning attributed to them under this SPD.

    2.      H-E-B DOES NOT PROVIDE WORKERS' COMPENSATION BENEFITS

    H-E-B has elected to discontinue coverage under the <u>Texas Workers' Compensation Act ("TWCA")</u> effective September 15, 1994.  Therefore, effective September 15, 1994, H-E-B shall be a non-subscriber to the TWCA, and the Partner shall not be entitled to benefits under the TWCA.

    3.      PARTNER'S ELECTION OF COMPREHENSIVE BENEFITS COVERAGE, RELEASE, WAIVER AND INDEMNITY AGREEMENT

    Partner, <u>individually and on behalf of heirs and beneficiaries,</u> elects to receive Comprehensive benefits coverage under the Plan and agrees to irrevocably and unconditionally release all claims and causes of action whether now existing or arising in the future and to waive the right to sue H-E-B, the Plan, the Plan Administrator, the Trust and/or the Trustees for the occupational injury, death or disease of the Partner arising out of and in the course and scope of employment, in exchange for the right to receive Comprehensive benefits coverage under the terms of the Plan.  In addition to H-E-B, the Plan, the Plan Administrator, the Trust and the Trustees, this release shall also extend to and comprise their owners, predecessors, successors, agents, officers, employees, representatives, subsidiaries and affiliates (the "Released Parties").  The SPD attached to the Agreement and the Plan and Trust, which are available for your review, are incorporated in this Agreement by reference.  These documents describe the benefits and conditions under which both Basic and Comprehensive benefits are provided under the Plan and through the Trust.

    Partner, <u>individually and on behalf of heirs and beneficiaries,</u> agrees that recovery from H-E-B as well as other Released Parties for occupational injury, death, or disease, arising out of and in the course and scope of employment, is limited to benefits provided by the Plan.  The Plan states the limit of H-E-B's and other Released Parties' liability to the Partner or the Partner's heirs or beneficiaries in the event of a claim against H-E-B or other Released Parties.  In the event the Partner suffers an occupational injury or an occupational disease, the Partner agrees to undertake health care in compliance with the Plan as a condition to obtaining benefits under the Plan and Trust.

    Partner, individually and on behalf of heirs and beneficiaries, agrees to INDEMNIFY, DEFEND, AND HOLD HARMLESS (including all costs and attorney's fees), H-E-B, the Plan Administrator, the Trust, the Trustee and/or the Released Parties from any claim, demand, or lawsuit by the Partner or any person or entity claiming by, through, or under the Partner, for occupational injury, death or disease of the Partner arising out of and in the course of employment, **whether caused or contributed to by the negligence or gross negligence of H-E-B or other Released Parties**, except for claims filed pursuant to the Plan.

    4.      ARBITRATION

    It is agreed that any and all disputes, claims, (whether tort, contract, statutory or otherwise) and/or controversies which relate, in any manner, to this Agreement, the Plan, or the Trust <u>or to the occupational injury, death or disease of Partner</u> shall be submitted to final and binding arbitration under the Federal Arbitration Act, in accordance with the terms and conditions outlined in the SPD under the heading "Arbitration of Disputes".  The claims covered by this agreement to arbitrate include, but are not limited to, those which relate to the following:

    a.    The formation, application and interpretation of <u>this</u> Agreement.
    b.    Eligibility for benefits from the Trust, coverage under the Plan <u>or claims for damages or monetary award</u>.
    c.    That H-E-B has discharged or in any manner discriminated against Partner because Partner in good faith filed a claim, hired a lawyer to represent him or her in a claim, instituted, or caused to be instituted, in good faith, any proceeding under the Agreement, the Plan or the TWCA, or has testified in any such proceeding.



EXHIBIT

"A"

5.    NOT AN EMPLOYMENT AGREEMENT

This Agreement is not, and shall not be construed to be, an employment agreement or a contract of employment. This Agreement does not alter the "at will" status of Partner's employment.

6.    TERMINATION

H-E-B and the Trustees reserve the right to amend or terminate the Plan. Non-material changes, increased benefits, procedural changes, and changes that do not apply to Partner will not terminate this Agreement and it shall remain in full force and effect.

7.    PARTNER REPRESENTATIONS

Partner warrants and represents that no promise or representation of any kind has been made to the Partner except as described in the Agreement. Partner further warrants and represents that the Partner has entered into this Agreement voluntarily without duress or coercion and acknowledges that he or she has been given the opportunity to discuss this Agreement with his or her private legal counsel and has availed himself or herself of that opportunity to the extent Partner wishes to do so.

8.    SURVIVABILITY

Should one or more provisions of this Agreement, be rendered or declared invalid by reason of any existing or subsequently enacted legislation, or by a decree of a court of competent jurisdiction, such invalidation of such provision or provisions hereof shall not affect the remaining portions of this Agreement.

This Election of Comprehensive Benefits, Release, Waiver, Indemnity, and Arbitration Agreement has been executed this _____ day of _____, 19__.

H. E. BUTT GROCERY COMPANY          By: _____    _____
WELFARE BENEFIT TRUST                     Partner's Signature                  Partner's Social Security Number

For the Trustees                                  Witness or Attest by _____

H. E. Butt Grocery Company hereby acknowledges and consents to the above Agreement and agrees to be bound by all of its terms, including but not limited to, the arbitration process contained in paragraph 4 herein.

Executed this ____ day of _____ 19__.

H. E. BUTT GROCERY COMPANY

By: _____

---

ELECTION OF BASIC COVERAGE

I have elected Basic Coverage and have declined Comprehensive Coverage.

_____
Partner's Signature and Date

_____
Partner's Social Security Number

---

CONSENT OF PARENT OR GUARDIAN OF PARTNERS WHO ARE YOUNGER THAN AGE 18

I, _____, as parent or legal guardian of _____, the Partner whose signature appears above do hereby consent to and agree to be bound by the above Election Form and Agreement on behalf of the Partner.

EXECUTED this ____ day of _____, 19__.

Parent's Signature: _____
Print Name: _____
Relationship to Partner: _____

Case 1:00-cv-00149   Document 23   Filed in TXSD on 07/30/2001   Page 49 of 54

```
A26PO0010                 ***** RISK MANAGEMENT SYSTEMS *****              A26MP010
Apr 12,01                    - MAINTAIN ELECTED COVERAGES -                03:11 PM
```

*Action (A,B,C,D,M):        _  Soc. Sec. Nbr:  454356566_


     Name:  SALDANA         DANIEL


     LVL1:  01   LVL2:  43   Div:        Dist:  01   Store:  00263   Dept:  08


               Enter Correct Values In Following Fields

           SAFETY            FORM            TYPE          DELETE
           TAKEN?          RECEIVED        COVERAGE        RECORD?
           (Y/N)            (Y/N)          (B/C/Sp)        (Y/Sp)

             N                Y               C


Enter-PF1---PF2---PF3---PF4---PF5---PF6---PF7---PF8---PF9---PF10--PF11--PE12--
       help  quit  retrn                                             main
Record displayed


Date: 4/12/ 1 Time: 03:08:33 PM
```



11-IX

NO. 2000-07-2892-E

| | | |
|---|---|---|
| DANIEL SALDANA, | § | IN THE 357TH JUDICIAL |
| Plaintiff, | § | |
| | § | |
| vs. | § | DISTRICT COURT OF |
| | § | |
| H.E. BUTT GROCERY COMPANY, | § | |
| Defendant. | § | CAMERON COUNTY, TEXAS |

## PLAINTIFF'S ANSWERS TO DEFENDANT'S
## REQUEST FOR ADMISSION OF FACTS

COMES NOW, plaintiff, Daniel Saldaña, and pursuant to Rule 198 of the Texas

Rules of Civil Procedures hereby files his answers to the defendant's request for admission

of facts.

Respectfully submitted,

BY: _____

GEORGE P. POWELL
State Bar No.
HINOJOSA & POWELL, P.C.
612 Nolana, Ste. 410
McAllen, TX 78504
(956) 686-2413
Fax No.  (956) 686-8462

JAMES A. HERRMANN
State Bar No.  09541500
1205 E. Tyler Avenue
Harlingen, TX 78550
(956) 421-5776
Fax No.  (956) 421-5779



DEFENDANT'S
EXHIBIT
D-3

## CERTIFICATE OF SERVICE

I, GEORGE P. POWELL, do hereby certify that on this the 28th day of November, 2000, I caused to be mailed a true and correct copy of Plaintiff's Answers to Defendant's Request for Admission of Facts to defendant's attorney of record:

Mr. Robert A. Valadez
**SHELTON & VALADEZ, P.C.**
2600 Weston Centre
112 E. Pecan
San Antonio, TX 78205

C.M., R.R.R. # Z-196-192-285

_____
GEORGE P. POWELL

*SALDANA, D./ANS TO DEF RQ ADM/2*

## REQUEST FOR ADMISSONS

<u>REQUEST FOR ADMISSION NO. 1</u>: Admit or deny you began employment with H.E.B. in September, 1994.

<u>Answer</u>:        Admit.

<u>REQUEST FOR ADMISSION NO. 2</u>: Admit or deny you attended an orientation session relating to the H.E.B. Work Injury Benefit Plan before the date of the incident made the basis of this lawsuit.

<u>Answer</u>:        Admit.

<u>REQUEST FOR ADMISSION NO. 3</u>: Admit or deny you were provided with a Summary Plan Description relating to the H.E.B. work Injury Benefit Plan before the date of the incident made the basis of this suit.

<u>Answer</u>:        Admit.

<u>REQUEST FOR ADMISSION NO. 4</u>: Admit or deny you elected Comprehensive Coverage as outlined in the Summary Plan Description by signing an Election and Agreement Form attached as the last page of the Summary Plan Description.

<u>Answer</u>:        I do not remember, therefore, denied.

<u>REQUEST FOR ADMISSION NO. 5</u>: Admit or deny you received medical benefits pursuant to the Comprehensive Plan after the date of the incident made the basis of this lawsuit for injuries sustained on the date of the incident.

<u>Answer</u>:        I admit that I received some medical benefits.

<u>REQUEST FOR ADMISSION NO. 6</u>: Admit or deny you received indemnity benefits pursuant the Comprehensive Plan.

<u>Answer</u>:        Admit.

*SALDANA, D./ANS TO DEF RQ ADM/3*

**REQUEST FOR ADMISSION NO. 7**: Admit or deny you did not receive indemnity benefits pursuant to the Comprehensive Plan.

Answer:      See above.

**REQUEST FOR ADMISSION NO. 8**: Admit or deny the H.E.B. Work Injury Benefit Plan paid for medical care provided by Dr. Albert Sanders.

Answer:      Denied, Medicare paid.

**REQUEST FOR ADMISSION NO. 9**: Admit or deny the H.E.B. Work Injury Benefit Plan paid for medical care provided by Dr. B.N. Lakshmikanth.

Answer:      Denied, I do not know.

**REQUEST FOR ADMISSION NO. 10**: Admit or deny you did not personally pay for medical care provided by Dr. Albert Sanders.

Answer:      Medicare has paid for 80% and even though I have not paid Dr. Sanders, I am still liable for the 20% balance, therefore, denied.

**REQUEST FOR ADMISSION NO. 11**: Admit or deny Medicaid paid medical expenses for medical care related to your back injury after the date of the incident made the basis of this lawsuit occurred.

Answer:      Denied. Medicare paid. I did not qualify for Medicaid until July of 2000.

**REQUEST FOR ADMISSION NO. 12**: Admit or deny you did not appeal any decisions of the Plan Administrator before filing suit.

Answer:      Admit.

*SALDANA, D./ANS TO DEF RQ ADM/4*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL SALDANA | § | |
| | § | |
| V. | § | CIVIL ACTION NO. B-00-1491 |
| | § | |
| H. E. BUTT GROCERY COMPANY | § | |

## ORDER

On _____, 2001, all parties appeared through counsel for a hearing on Defendant's Motion to Compel Arbitration and Stay Proceedings Subject to Defendant's Motion for Summary Judgment. After considering the evidence, arguments and authorities presented by all counsel, the Court is of the opinion that Defendant's Motion to Compel Arbitration Subject to Defendant's Motion for Summary Judgment is well taken and shall be GRANTED.

IT IS THEREFORE ORDERED, that Defendant's Motion to Compel Arbitration Subject to Defendant's Motion for Summary Judgment is GRANTED.

SIGNED this _____ day of _____, 2001.


_____
HONORABLE ABLE C. LIMAS